**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mario Sebastian Preda,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　Defendant. | No. CV-21-00026-PHX-DWL<br><br>**ORDER** |

Plaintiff Mario Sebastian Preda challenges the denial of his applications for child's insurance benefits, disability insurance benefits, and supplemental security income under the Social Security Act ("the Act") by the Commissioner of Social Security ("Commissioner"). The Court has reviewed the briefs and Administrative Record (Doc. 11, AR.) and now affirms the Administrative Law Judge's ("ALJ") decision.

**I.　PROCEDURAL HISTORY**

In August 2018, Plaintiff filed four applications for benefits. (AR at 16.) Plaintiff eventually amended his alleged disability onset date to January 1, 1999. (*Id.*) The Social Security Administration ("SSA") denied Plaintiff's claims at the initial and reconsideration levels of administrative review. (*Id.*) Plaintiff timely requested an administrative hearing. (*Id.*) On September 14, 2020, the ALJ conducted a hearing. (*Id.* at 49-62.) On September 29, 2020, the ALJ issued a decision denying Plaintiff's applications. (*Id.* at 16-34.) The Appeals Council later upheld the ALJ's denial. (*Id.* at 1-6.)

…

## II. LEGAL STANDARD

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. §404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

To qualify for child's insurance benefits, the evidence must establish disability before the claimant's twenty-second birthday. 42 U.S.C. § 402(d)(1)(B). *See generally Smolen v. Chater*, 80 F.3d 1273, 1280 (9th Cir. 1996) ("[T]he claimant must be disabled continuously and without interruption beginning before [his] twenty-second birthday until the time [he] applied for child's disability insurance benefits."). Otherwise, the definition of disability remains the same as for disability insurance benefits. 42 U.S.C. § 402(d)(1)(B) (citing 42 U.S.C. § 423(d)).

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

## III.   THE ALJ'S DECISION

The ALJ found that Plaintiff had engaged in substantial, gainful employment from 1996 to 1998 and that his eligibility for child's insurance benefits ceased despite the amendment of his onset date to 1999. (AR at 19.) The ALJ also found that Plaintiff had no severe impairments before the expiration of his date last insured ("DLI") in June 2000 and his twenty-second birthday in 1999.[1] (*Id.* at 19-20.) The ALJ found that, after the DLI, Plaintiff suffered from the following severe impairments: monocular exotropia of the right eye, bilateral hearing loss, headaches, and minimal right knee osteoarthritis. (*Id.* at 20-23.) The ALJ concluded Plaintiff's impairments did not meet or medically equal a listing at step three. (*Id.* at 23-25.) The ALJ found that Plaintiff had the RFC to perform work at all exertional levels but with certain non-exertional limitations, including no climbing of ladders, ropes, or scaffolds; no occupational driving at night; a limitation to the use of a telephone with volume controls; no job duties requiring "precise depth perception, such as threading a needle"; and only occasional exposure to excessive noise, pulmonary irritants, poorly ventilated areas, hazardous or dangerous machinery, and unprotected heights. (*Id.* at 25.)

In the course of her analysis, the ALJ concluded that the opinions of Plaintiff's treating physician, Frederic Civish, III, M.D. ("Dr. Civish"), were "minimally persuasive" and that the opinions of another treating source, Deanna Gem, NP-BC ("NP Gem"), were "not persuasive." (*Id.* at 31-33.) In contrast, the ALJ concluded that the opinions of the

---

[1]   The ALJ noted the absence of medical records before June 30, 2000. (AR at 20.)

two consultative examiners were "persuasive" (*id.* at 29-30) and that the opinions of the state agency reviewers were "partially persuasive" (*id.* at 32)  The ALJ concluded that Plaintiff had no past relevant work but could perform other jobs existing in significant numbers in the national economy, including office helper, assembler, and counter clerk. (*Id.* at 33-34.)  Thus, the ALJ concluded that Plaintiff is not disabled. (*Id.* at 34.)

**IV.   DISCUSSION**

Plaintiff raises only one issue on appeal—whether the ALJ committed harmful error when discounting the opinions of Dr. Civish.  (Doc. 15 at 9-20.)[2]

### A.   New Regulations

In January 2017, the SSA amended the regulations concerning the evaluation of medical opinion evidence.  *See Revisions to Rules Regarding Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017).  Because the new regulations apply to applications filed on or after March 27, 2017, they are applicable here.

The new regulations, which eliminate the previous hierarchy of medical opinions, provide in relevant part as follows:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . .  The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency . . . .

20 C.F.R. § 416.920c(a).[3]  Regarding the "supportability" factor, the new regulations explain that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), . . . the more

---

[2]   Portions of Plaintiff's reply brief can be interpreted as raising a challenge to the ALJ's evaluation of the opinions of NP Gem.  (Doc. 17 at 3.)  However, Plaintiff made clear in the "Statement of the Issues" in his opening brief that he is only challenging the ALJ's evaluation of the opinions of Dr. Civish.  (Doc. 15 at 1.)  "The district court need not consider arguments raised for the first time in a reply brief."  *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

[3]   Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, the frequency of examinations, the purpose and extent of the treatment relationship, and the specialization of the provider.  20 C.F.R. § 416.920c(c).

persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). Regarding the "consistency" factor, the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2)

Recently, the Ninth Circuit confirmed that the "recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Thus, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* With that said, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (cleaned up).

B. The ALJ's Evaluation Of Dr. Civish's Opinions

Dr. Civish expressed opinions regarding Plaintiff in a "Disability Note" dated March 4, 2019 (AR at 418); in a "Vision Impairment" residual functional capacity questionnaire dated August 7, 2019 (*id.* at 419-22, 960-63 [duplicate]); and in a "Headache" residual functional capacity assessment dated August 7, 2019 (*id.* at 423-45; 964-66 [duplicate]). Although not required to do so under the relevant regulations,[4] the ALJ addressed each document individually. (*Id.* at 31-32.)

---

[4] Under 20 C.F.R. § 404.1520c(b)(1), "when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), [the Commissioner] will articulate how [she] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. [The Commissioner is] not required to articulate how [she] considered each medical opinion or prior administrative medical finding from one medical source individually."

First, in the Disability Note, Dr. Civish stated that Plaintiff "was given disability as a child" due to various medical problems, that those problems have "continued and worsened" since Plaintiff became an adult, and that Plaintiff's other medical issues, including "profound" bilateral hearing loss and "daily, severe, vascular headaches, consistent with Classical Migraines" that occur almost daily and "last for several hours," are "very disabling. (*Id.* at 418.) Dr. Civish opined that Plaintiff's headaches "appear to be related to his permanent vision problems," that "there are no effective treatments for [Plaintiff's] vision problems and disabling headaches," and that Plaintiff is therefore "disabled and should receive disability." (*Id.*) The ALJ deemed these opinions "minimally persuasive" for three reasons: (1) any conclusion an individual is "disabled" is "reserved to the Commissioner"; (2) "the assessment of hearing loss and vision loss [is] not corroborated by objective testing results"; and (3) "the assessment is not consistent with [Plaintiff's] own admissions regarding his daily functioning, including remaining able to drive, past work as a driver, and providing full-time daily care for his young son (without assistance)." (*Id.* at 31.)

Second, in the Vision Impairment questionnaire, Dr. Civish stated that Plaintiff suffers from blindness, frequent headaches with nausea, and other neurological symptoms. (*Id.* at 419.) Based on those symptoms, Dr. Civish opined, *inter alia*, that Plaintiff would be "[i]ncapable of even 'low stress' jobs," could only occasionally lift less than 10 pounds, could rarely stoop and crouch, and would likely be absent from work more than four days per month. (*Id.* at 419-21.) When prompted to "describe additional tests or clinical findings . . . that clarify the severity of the patient's impairments," Dr. Civish cautioned that "[Plaintiff] should get a full functional capacity evaluation [and] see a neurologist. I do not do functional evaluations . . . ." (*Id.* at 421.) The ALJ deemed these opinions "minimally persuasive" for two related reasons: (1) "Dr. Civish has indicated [Plaintiff] cannot sustain even 'low stress' jobs . . . but admits [Plaintiff] requires a neurological evaluation for full functional capacity assessment"; and (2) "it is noted that the neurological assessment in evidence concluded [Plaintiff's] headaches were not consistent with

migraine; but Dr. Civish diagnosed them as migraine," and therefore the questionnaire "contain[s] diagnostic inaccuracies." (*Id.* at 32.)

Third, in the Headache questionnaire, Dr. Civish diagnosed Plaintiff as, "for about 8 years," suffering from "unilateral severe headaches, nausea, blindness" that last for "1-3 days." (*Id.* at 423.) Based on those symptoms, Dr. Civish opined, *inter alia*, that Plaintiff would be "[i]ncapable of even 'low stress' jobs," suffered from an "inability to focus, move, & concentrate," and would likely be absent from work more than four days per month. (*Id.* at 424-45.) When prompted to "[i]dentify any additional tests or procedures . . . to fully assess your patient's impairments, symptoms and limitations," Dr. Civish wrote that Plaintiff "should see a neurologist & get a full functional evaluation." (*Id.* at 425.) The ALJ deemed these opinions "minimally persuasive" for two reasons: (1) "Dr. Civish appears to rely on [Plaintiff's] subjective complaints of pain, rather than the objective and / or clinical neurological evaluation, which he indicated was necessary in [his other two opinion forms]; (2) "the limitations assessed are not consistent with the claimant's own admissions regarding daily functioning, including driving, working as a driver, and taking care of his young son full-time (and without assistance)." (*Id.* at 32.)

C.  The Parties' Arguments

Plaintiff argues the ALJ erred when discounting the opinions of Dr. Civish. (Doc. 15 at 12-19.) First, as for the ALJ's decision to discount Dr. Civish's opinions (as well as his subjective complaints) based on inconsistency with the neurological assessment, Plaintiff argues this approach was flawed because (1) there is no objective test for migraines; (2) Dr. Civish's diagnosis of migraines was corroborated by his treatment notes and other medical evidence in the record; and (3) the ALJ's discussion of the neurological assessment appeared in the portion of the opinion evaluating the vision-related questionnaire, not the headache-related questionnaire. (*Id.* at 12-14.) Next, as for the ALJ's decision to discount Dr. Civish's opinions based on inconsistency with Plaintiff's activities, Plaintiff argues that (1) his ability to complete some household chores and drive a car is not determinative of disability; (2) the ALJ's focus on his past job as a driver was

internally inconsistent because the ALJ elsewhere determined that his past job as a driver did not qualify as "past relevant work"; (3) the ALJ did not, at any rate, *explain* why his ability to complete household chores and drive "translates into an ability to work for eight hours per day, five days per week, on a consistent basis"; and (4) "it was error for the ALJ to attach significance to" Plaintiff's "ability to care for his young son full-time" because "[a]s a father, Plaintiff would feel a moral obligation to care for his son to the best of his abilities, despite his impairments," and thus "[t]he ALJ would appear to imply that Plaintiff is not disabled because he did not abandon his child to the care of others." (*Id.* at 14-16.) Third, Plaintiff argues that Dr. Civish's opinions were otherwise supported by his treatment notes and consistent with other medical evidence in the record. (*Id.* at 16-19.)

The Commissioner disagrees and asks this Court to affirm. (Doc. 16 at 11-19.) First, the Commissioner argues that the ALJ properly discounted Dr. Civish's opinions in both questionnaires pursuant to the supportability factor because, *inter alia*, Dr. Civish indicated in each questionnaire that further neurological evaluation was needed. (*Id.* at 13-14.) Second, the Commissioner argues that the ALJ also properly discounted Dr. Civish's opinions due to his limited treatment relationship with Plaintiff—the meeting in March 2019 was at the request of Plaintiff's lawyer and was for the purpose of obtaining a disability determination and the only prior meeting was in 2017 for a tattoo infection. (*Id.* at 14-16.) Third, the Commissioner argues that the ALJ also properly discounted Dr. Civish's opinions because the subjective symptoms Plaintiff reported to Dr. Civish were contradicted by Plaintiff's statements to other medical providers and various pieces of objective medical evidence, including a brain MRI that was negative. (*Id.* at 16-17.) Fourth, the Commissioner argues that the ALJ also properly discounted Dr. Civish's opinions because they were inconsistent with Plaintiff's activities, including Plaintiff's ability to work for several years as a driver during the period of alleged disability and Plaintiff's ability to provide full-time care for a young child. (*Id.* at 17-18.) The Commissioner acknowledges that the ALJ did not characterize Plaintiff's past job as a driver as "past relevant work" but contends that "it was still probative of Plaintiff's

condition and limitations." (*Id.*)  Fifth, the Commissioner argues that the ALJ also properly discounted Dr. Civish's opinions (as well as the opinions of NP Gem) because they were contradicted by the opinions of other medical sources, who "opined that Plaintiff had no greater limitations than already encompassed in the RFC." (*Id.* at 18-19.)

In reply, Plaintiff reiterates his position that, because there is no objective test for migraines, it was improper for the ALJ to reject his symptom testimony (and Dr. Civish's reliance on that symptom testimony) due to the absence of objective verification (Doc. 17 at 1-2); accuses the Commissioner of offering *post hoc* rationalizations for the underlying decision (*id.* at 2); argues that Dr. Civish's (and NP Gem's) opinions were consistent, in many ways, with the other medical opinions in the record (*id.* at 3-4); and argues that the Commissioner "repeat[s] the ALJ's mistake of failing to establish how Plaintiff's daily activities translate into an ability to perform full time work" (*id.* at 4).

D.   Analysis

The Court finds no error in the ALJ's decision to assign little persuasive value to the opinions of Dr. Civish.

The ALJ's determination that Dr. Civish's opinions were inconsistent with Plaintiff's activities provides the most straightforward basis for affirmance.  As noted, Dr. Civish opined in his letter and questionnaires that Plaintiff "is disabled" (AR at 418), is "[i]ncapable of even 'low stress' jobs" (*id.* at 419-21, 424-25), can rarely stoop and crouch and can only occasionally lift less than 10 pounds (*id.* at 419-21), suffers from an "inability to . . . move" (*id.* at 424-25), and would be absent from work at least four times per month (*id.* at 421, 425).  However, Plaintiff admitted in his "Function Report", in response to the question "Describe what you do from the time you wake up until going to bed," that "I stay home with my son all day long. . . . [M]y son is 2 ½ years old, I take care of him." (*Id.* at 326.)  Additionally, in his "Disability Report," Plaintiff reported that he worked 56 hours per week (8 hours per day, 7 days per week) as a driver for a "First class transportation" company from December 2015 through December 2017.  (*Id.* at 320.)

It was permissible for the ALJ to conclude that such activities were inconsistent

with Dr. Civish's opined-to limitations (a determination that would, in turn, support findings of inconsistency and lack of supportability under the new regulations). As for Plaintiff's childcare responsibilities, the Ninth Circuit has recognized that an ALJ may disregard a treating physician's opinions if the opined-to limitations are inconsistent with evidence that the claimant serves as the sole caregiver for a young child. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir 2001) (affirming ALJ's rejection of treating physician's opinions in part because the opined-to "restrictions appear to be inconsistent with the level of activity that Rollins engaged in by maintaining a household and raising two young children, with no significant assistance from her ex husband"). That is exactly the case here.[5] Although Plaintiff appears to argue that, as a policy and/or "moral" matter, ALJs (and courts) should not take childcare responsibilities into account when assessing a claim for disability benefits (Doc. 15 at 16), this argument is contrary to common sense and Ninth Circuit law.

Separately, the ALJ could have rationally concluded that Plaintiff's ability to hold and perform a 56-hour-per-week job as a driver for two years during the period of alleged disability was inconsistent with Dr. Civish's opined-to limitations. *Cf. Sisco v. Berryhill*, 770 F. App'x 346, 347 (9th Cir. 2019) ("The ALJ properly rejected Dr. Teveliet's opinions based on specific and legitimate reasons, including . . . inconsistency with Sisco's activities."); *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (noting that a "conflict with . . . daily activities . . . may justify rejecting a treating provider's opinion"). Even if this job did not formally qualify as "past relevant work" for purposes of the final step of the disability analysis, it was relevant in evaluating the persuasiveness of Dr. Civish's opinions regarding Plaintiff's inability to move, hold a low-stress job, and/or regularly perform a job.

Given these determinations, it is arguably unnecessary to decide whether the ALJ's

---

[5] It is worth emphasizing that Plaintiff independently takes care of his son for the entire day. Thus, this is not a case where an ALJ improperly relied on activities that do not "consume a substantial part" of the claimant's day. *Vertigan v. Halter,* 260 F.3d 1044, 1049-50 (9th Cir. 2001).

- 10 -

other proffered reasons for discounting Dr. Civish's opinions were also permissible and supported by substantial evidence. Nevertheless, in an abundance of caution, and because it is unclear whether the ALJ relied on "inconsistency with activities" as a basis for discounting the opinions in Dr. Civish's vision-related questionnaire, the Court notes that it also finds no error in the ALJ's decision to discount the opinions in both questionnaires based on Dr. Civish's acknowledgement that further evaluation by a neurologist was necessary. (AR at 421, 425.) Indeed, in the vision-related questionnaire, Dr. Civish stated: "I do not do functional evaluations." (*Id.* at 421.) Even when ALJs owed deference to treating physicians, ALJs were not required "to accept the opinion of any physician, including a treating physician, if that opinion [was] brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. It was rational for the ALJ to conclude that Dr. Civish's own caveats and qualifications implicated this rule here.[6]

Accordingly,

**IT IS ORDERED** that the ALJ's decision is affirmed. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 7th day of June, 2022.

_____
Dominic W. Lanza
United States District Judge

---

[6] Alternatively, any error with respect to the vision-related questionnaire was "inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and quotation marks omitted) The vision-related questionnaire mostly repeats the limitations set out in the headache-related questionnaire and, as discussed above, the ALJ did not err in rejecting the opinions in the headache-related questionnaire.